**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | | |
|---|---|---|
| CARSON KRUEGER, individually and on behalf of a class of similarly situated individuals, | ) | |
| *Plaintiff*, | ) | No. 1:24-cv-05722 |
| v. | ) | Hon. Edmond E. Chang |
| CHESS.COM, LLC., a Delaware limited liability company, | ) | |
| *Defendant.* | ) | |

**FIRST AMENDED CLASS ACTION COMPLAINT**

Plaintiff Carson Krueger ("Plaintiff") brings this First Amended Class Action Complaint against Defendant Chess.com, LLC. ("Chess.com" or "Defendant") to stop Defendant's unlawful disclosure of its customers' personally identifiable information and to seek redress for all those who have been harmed by Defendant's misconduct. Plaintiff alleges as follows based on personal knowledge as to himself and his own acts and experiences and as to all other matters, on information and belief, including an investigation by his attorneys.

**INTRODUCTION**

1. This is a class action suit brought against Defendant for violations of the Video Privacy Protection Act ("VPPA"), 18 U.S.C. § 2710. *et seq*, which prohibits the disclosure of consumers' video viewing history without their informed, written consent.

2. Defendant is the operator of an internet chess server boasting one of the largest chess platforms in the world with over 100 million members.[1]

[1] https://www.chess.com/article/view/chesscom-reaches-100-million-members

3. In addition to playing chess matches online, Defendant's website offers various forms of audio-visual materials including prerecorded videos of chess matches and lessons.

4. Defendant's website has a "freemium" model, meaning some features are available for free and others require a paid subscription in order to gain access.

5. Critically, Defendant utilizes sophisticated and invasive tracking technology that collects its subscribers' personally identifiable information ("PII"), including information which identifies a person as having viewed specific videos on Defendant's website. Defendant knowingly discloses this information to third party advertisers so that they can target specific users with specifically tailored advertisements based on their viewing history and their use of the website.

6. However, Defendant discloses its subscribers' PII without their consent, and in doing so, Defendant has violated the VPPA and Plaintiff's and the other Class members' statutory rights.

7. Accordingly, Plaintiff brings this class action for legal and equitable remedies to redress and put a stop to Defendant's practices of knowingly disclosing its subscribers' PII to third-parties in violation of the VPPA.

## JURISDICTION AND VENUE

8. This Court has federal question jurisdiction under 28 U.S.C. § 1331 because this action arises under the Video Privacy Protection Act, 18. U.S.C. § 2710 *et seq*.

9. Venue is proper in this judicial district under 28 U.S.C. §§ 1391(b) because a substantial part of the events and/or omissions giving rise to the claim occurred in this District, as Plaintiff was a subscriber of Defendant's streaming service in this District.

## PARTIES

10. Plaintiff Carson Krueger is a natural person and citizen of Illinois.

11. Defendant is a Delaware limited liability company headquartered in Orem, Utah.

## COMMON FACTUAL ALLEGATIONS

### I. The Video Privacy Protection Act

12. The VPPA prohibits "[a] video tape service provider who knowingly discloses, to any person, personally identifiable information concerning any consumer of such provider." 18 U.S.C. § 2710(b)(1).

13. The VPPA defines PII as "information which identifies a person as having requested or obtained specific video materials or services from a video service provider." 18 U.S.C. § 2710(a)(3).

14. A video tape service provider is "any person, engaged in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual material." 18 U.S.C. § 2710(a)(4).

15. Further, the act defines a "consumer" as "any, renter, purchaser, or subscriber of goods or services from a video tape service provider." 18 U.S.C. § 2710 (a)(1).

16. In 2012, Congress amended the VPPA, and in so doing, reiterated the Act's applicability to "so-called 'on-demand' cable services and internet streaming services [that] allow consumers to watch movies or TV shows on televisions, laptop computers, and cell phones." S. Rep. 112-259, at 2.

17. Thus, the VPPA applies to entities who operate websites that provide videos, such as Defendant, and its online videos which subscribers access watch video chess content.

## II. Defendant Discloses its Subscribers' PII to Third Parties

18. Defendant is the operator of an internet chess server boasting one of the largest chess platforms in the world with over 100 million members.

19. In addition to playing chess matches online, Defendant's website offers various forms of audio-visual materials including prerecorded videos of chess matches and lessons.

20. Thus, through its website, Defendant creates, hosts, and provides hundreds of videos to its online users.

21. Defendant's website has a "freemium" model, meaning some features are available for free upon creating a free account, and additional features require a paid subscription in order to gain access. Thus, Defendant creates exclusive video content in an effort to increase its number of subscribers.

22. As a result, Defendant is engaged in the business of the rental, sale, and delivery of audio-visual materials to its customers who subscribe to its website (hereinafter "Subscribers").

23. Importantly, as shown below, while creating their accounts, Subscribers are not specifically asked to consent to Defendant sharing and disclosing their PII to third parties, including information which identifies them as having viewed specific video content.




24. However, despite not obtaining informed, written consent from its Subscribers which is distinct and separate from any form setting forth other legal obligations, Defendant discloses its Subscribers' PII to various third parties.

25. Specifically, Plaintiff's investigation and thorough expert live tracking analysis of Defendant's website shows that Defendant discloses its Subscribers' PII by utilizing third party tracking code, third party ad analytics, tracking pixels and similar tracking technologies.

26. For example, Defendant discloses Subscribers' PII to Rocket Fuel, Inc., a digital advertising company. Defendant uses Rocket Fuel's technology to track and sync user data across different platforms and partners. By putting Rocket Fuel's pixel on Defendant's website, the pixel transparently tracks Subscribers' behavior, including whether a specific Subscriber watches a specific video, and transmits such PII to Rocket Fuel. Such tracking is pervasive throughout the Subscribers' entire session and will track every action of a Subscriber on Defendant's website and even follow the Subscriber to other websites.

27. Additionally, Defendant also discloses Subscribers' PII to third parties through its use of Rubicon Project, a digital advertising technology, which is utilized for real-time bidding

(RTB) of advertising on Defendant's website. During RTB, Rubicon Project discloses information provided by Defendant about its Subscribers to third party advertisers allowing those advertisers to analyze how a Subscriber interacts with the website and place bids to occupy ad space. Therefore, when a Subscriber interacts with a specific ad, including those that exist on Defendant's prerecorded videos, the third-party advertiser obtains information that the specific Subscriber watched a specific video in which its advertisement was placed. Therefore, disclosing the subscriber's PII to both the host of the RTB and the third-party advertisers.

28. Defendant utilizes several additional forms of invasive tracking technologies, pixels and third-party advertisers which disclose its Subscribers' PII. Importantly, such technologies identify specific Subscribers by their usernames. Subscribers' usernames are linked to their Facebook, Apple, and Google accounts such that when their usernames are disclosed, the Subscribers' account is associated with a specific individual.

29. Further, Defendant's invasive use of tracking technologies and the disclosure of its Subscribers' PII is further evidenced in Defendant's Privacy Policy[2] which discloses that Defendant collects a slew of information from its Subscribers including but not limited to:

A. Personal Information, including information that "identifies, related to, describes, is capable of being associated with, or could reasonably be linked, directly or indirectly, with a particular consumer or household." Personal Information is collected by Defendant and third-party providers directly from Subscribers in the form of the actions they take and the activities they complete when using the services. Such information can include: email, phone number, first and last name, and location.

[2] https://www.chess.com/legal/privacy

B. Usage Data, which includes pages of the website that Subscribers visit, geolocation, unique device identifiers, and IP address.

C. Cookies Data, including analytics and performance cookies, which track how Subscribers use the website, the pages visited, and whether the user has visited the website before, and marketing cookies that assist serving advertisements relevant to subscribers' interests.

30. Further, Defendant admits that it has collected and shared all of the information listed below with its affiliates, partners, service providers and advertising networks within the past 12 months:

A. Real names, IP addresses, email addresses, browsing history, and information on Subscribers' interactions with Chess.com services.

31. Therefore, the compilation of data that Defendant itself admits it collects and discloses to third parties identifies specific Subscribers, and the specific video and audio visual materials that they viewed.

32. Critically, at no point does Defendant obtain its Subscribers', including Plaintiff's, prior written consent as required under the VPPA to share their PII and video viewing history with such third parties and its Subscribers remain unaware that their PII and other sensitive data is being disclosed and/or collected by such third parties.

33. Defendant's Subscribers are unaware of the status of their PII and viewing history, to whom it has been disclosed, and who has possession and retained such information as a result of Defendant's illegal disclosures.

34. By disclosing its Subscribers' PII, which undeniably reveals both an individual's identity and the video materials they have requested from Defendant's services, Defendant has

intentionally and knowingly violated the VPPA.

## FACTS SPECIFIC TO PLAINTIFF

35. Plaintiff Carson Krueger is a subscriber to Defendant's website.

36. Plaintiff has used his account with Defendant to view video materials through his subscription including watching prerecorded video materials such as chess lesson videos.

37. Defendant knowingly and intentionally disclosed Plaintiff's PII, including specifically his viewing history or PII, to third parties and affiliates.

38. Plaintiff never specifically and separately consented, agreed, authorized, or otherwise permitted Defendant to collect his PII, including specifically information that could be used to identify him as an individual who has requested to view a specific video(s), and disclose his PII to third-parties. Plaintiff did not provide his informed written consent to such disclosures in a form distinct and separate from any form setting forth his other legal obligations.

39. To this day, Plaintiff is unaware of the status of his PII, to whom it has been disclosed, and who has possession and retained his PII as a result of Defendant's illegal disclosures.

40. By disclosing Plaintiff's PII, which reveals both his identity and the video materials he has requested from Defendant's services to third-parties, Defendant has intentionally and knowingly violated the VPPA and Plaintiff's privacy rights.

## CLASS ALLEGATIONS

41. Plaintiff brings this action on his own behalf and on behalf of a nationwide class (the "Class"), defined as follows:

> The Class: All persons in the United States who subscribed to chess.com that also viewed prerecorded video materials from June 3, 2022 to the present.

42. Members of the Class will be referred to as "Class Members."

43. Plaintiff will fairly and adequately represent and protect the interests of the other Class Members. Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the other Class Members and have the financial resources to do so. Neither Plaintiff nor his counsel have any interest adverse to those of the other members of the Class.

44. Absent a class action, most Class Members would find the cost of litigating their claims to be prohibitive and would have no effective remedy. The class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants, and promotes consistency and efficiency of adjudication.

45. Defendant has acted and failed to act on grounds generally applicable to the Plaintiff and the Class Members, requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class Members, and making injunctive or corresponding declaratory relief appropriate for the Class as a whole.

46. The factual and legal bases of Defendant's liability to Plaintiff and to the other Class Members are the same, resulting in injury to the Plaintiff and to all of the other members of the Class. Plaintiff and the other members of the Class have suffered harm as a result of Defendant's unlawful and wrongful conduct.

47. Upon information and belief, there are thousands, if not millions, of Class Members such that joinder of all members is impracticable.

48. There are many questions of law and fact common to the claims of Plaintiff and the other Class Members, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not limited to, the following:

(a) Whether Defendant disclosed Class members' PII;

(b) Whether the information disclosed to third parties concerning Class Members PII constitutes personally identifiable information under the VPPA;

(c) Whether Defendant intentionally disclosed the Class Members' PII to third-parties;

(d) Whether Class members provided written informed consent to Defendant's disclosure of their PII to third parties as required by the VPPA;

(e) Whether the Class is entitled to damages and other relief as a result of Defendant's conduct.

## COUNT I
**Violations of the Video Privacy Protection Act**
**(On behalf of Plaintiff and the Class)**

49. Plaintiff hereby incorporates the above allegations by reference as though fully set forth herein.

50. The VPPA prohibits a "video tape service provider" from knowingly disclosing "personally-identifying information" of any subscriber to their services to a third party without their "informed, written consent[.]" 18 U.S.C. § 2710.

51. As defined in 18 U.S.C. § 2710 (a)(4), a "video tape service provider" is "any person, engaged in the business, in or affecting interstate commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audiovisual materials."

52. As defined in 18 U.S.C. § 2710 (a)(3), "personally-identifiable information" is defined to include "information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider."

53. As defined in 18 U.S.C. § 2710 (a)(1), a "consumer" means "any renter, purchaser, or subscriber of goods or services from a video tape service provider."

54. Defendant is a "video tape service provider" as defined in 18 U.S.C. § 2710 (a)(4) because it provides prerecorded videos and lesson videos to subscribers such as Plaintiff and the other Class members through its website.

55. Plaintiff, like the other Class members were "consumers" under the VPPA as they were subscribers to Defendant's website and viewed prerecorded videos through its service.

56. Defendant knowingly caused Plaintiff's and the other Class members' PII, including information that can be used to identify them as having requested or obtained specific video materials or services, to be disclosed to third parties. This information constitutes PII under 18 U.S.C. § 2710 (a)(3) because it identified each Plaintiff and Class Members to third parties as an individual who viewed specific video materials requested from Defendant.

57. As set forth in 18 U.S.C. § 2710 (b)(2)(B), "informed, written consent" must be (1) in a form distinct and separate from any form setting forth other legal or financial obligations of the consumer; and (2) at the election of the consumer, is either given at the time the disclosure is sought or given in advance for a set period of time not to exceed two years or until consent is withdrawn by the consumer, whichever is sooner."

58. Defendant did not obtain informed, written consent from Plaintiff and the Class Members under the VPPA before disclosing their PII, including specifically their viewing history, to third parties.

59. Defendant knew that these disclosures identified Plaintiff and Class Members to third parties. By knowingly and intentionally disclosing Plaintiff's and Class Members' PII without their written consent, Defendant violated Plaintiff's and Class Members' statutorily protected right to privacy under the VPPA.

60. As a result of the above-mentioned violations, Defendant is liable to Plaintiff and the other Class Members for damages related to their loss of privacy in an amount to be determined at trial.

61. On behalf of himself and the Class, Plaintiff seeks: (i) declaratory relief; (ii) injunctive and equitable relief as it is necessary to protect the interests of the Plaintiff and Class by requiring Defendant to comply with the VPPA; (iii) statutory damages of $2,500 for each violation of the VPPA pursuant to 18 U.S.C. § 2710 (c); and (iv) reasonable attorneys' fees and costs and other litigation expenses.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and the Class, prays for the following relief:

1. An order certifying the Class as defined above;
2. For all forms of relief set forth above;
3. An order enjoining Defendant from continuing to engage in the unlawful conduct and practices described herein;
4. An award of attorney's fees and costs;
5. Award such further relief as the Court deems reasonable and just.

## JURY DEMAND

Plaintiff requests trial by jury of all claims that can be so tried.

DATED: September 11, 2024

Respectfully submitted,

CARSON KRUEGER, individually and on behalf of similarly situated individuals

By: /s/ *Jordan R. Frysinger*
One of Plaintiff's Attorneys

Eugene Y. Turin
Jordan R. Frysinger
McGuire Law, P.C.
Firm ID: 56618
55 W. Wacker Drive, 9th Floor
Chicago, IL 60601
Tel: (312) 893-7002
eturin@mcgpc.com
jfrysinger@mcgpc.com

*Attorneys for Plaintiff and the Putative Class*