UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CARSON KRUEGER, individually and on behalf of himself and all others similarly situated, | |
| Plaintiff, | No. 1:24-CV-05722 |
| v. | Judge Edmond E. Chang |
| CHESS.COM, LLC, | |
| Defendant. | |

**MEMORANDUM OPINION AND ORDER**

Carson Krueger brings a proposed class action against Chess.com, LLC, for alleged violations of the Video Privacy Protection Act (both sides call it the VPPA), 18 U.S.C. § 2710. R. 15, Am. Compl. ¶ 1.[1] Krueger alleges that Chess.com violated the Act by knowingly disclosing information to others that identifies which videos Krueger (and other users) watched on the company's online site. Am. Compl. ¶ 5. Chess.com moves to dismiss for failure to state a claim. R. 20, Def.'s Mot. But Krueger plausibly alleges that Chess.com violated the statute, so the motion is denied.

**I. Background**

For the purposes of this motion, the Court accepts as true the factual allegations in Krueger's amended complaint and draws all reasonable inferences in his

---

[1]Citations to the record are "R." followed by the docket entry number and, if needed, a page or paragraph number. This Court has federal-question jurisdiction over this case under 28 U.S.C. § 1331, and even more specifically under the VPPA, 18 U.S.C. § 2710(c)(1).

favor. *McGowan v. Hulick*, 612 F.3d 636, 638 (7th Cir. 2010) (citing *Erickson v. Pardus*, 551 U.S. 89, 90 (2007)).

Chess.com operates an internet-chess server that has attracted over 100 million users worldwide. Am. Compl. ¶ 18. Among other features, like the ability to play online-chess matches against other users, the website offers various audio-visual materials, including hundreds of prerecorded videos of chess matches and lessons. *Id.* ¶¶ 19–20. To access any of Chess.com's features, users must create an account. *Id.* ¶ 21. Users with free accounts can access some of the site's features, but other features—including some videos—require a paid subscription to access. *Id.*

When someone creates an account on Chess.com, they are not asked to consent to the disclosure of information that identifies the videos they watch. Am. Compl. ¶ 23. But Krueger alleges that Chess.com nonetheless collects and discloses this information to others. *Id.* ¶ 24. First, he alleges that Chess.com collects and discloses information that identifies each user: all users must provide an email address or phone number (or both) to create a Chess.com account. *Id.* ¶¶ 29–30; R. 25-1, Exh. A, Privacy Policy at 5. And users can choose to provide their first and last name. Am. Compl. ¶¶ 29–30; Privacy Policy at 5. Users may also link their Chess.com account to other accounts that contain identifying information, such as their Facebook, Apple, and Google accounts. Am. Compl. ¶ 28. And Chess.com collects other identifying information, like users' geolocations and IP addresses. *Id.* ¶ 29. Krueger alleges that Chess.com discloses this identifying information to third-party advertisers. *Id.* ¶ 30.

Second, Krueger alleges that Chess.com collects and discloses information about the videos each user views. Am. Compl. ¶ 26. Krueger asked an expert to conduct a "live tracking analysis" of the website, which revealed that Chess.com uses code, ad analytics, and tracking pixels to track and disclose the videos that users view. *Id.* ¶ 25. For example, Chess.com allows a digital-advertising company to put a pixel on its site that tracks users' behavior, including which videos they watch. *Id.* ¶ 26. In that same vein, Chess.com uses digital-advertising technology that allows third-parties to track when users interact with advertisements, including ads placed on videos on the site, which would allow advertisers to understand the specific videos that users watch. *Id.* ¶ 27. Krueger also points to Chess.com's privacy policy, which says that the company discloses usage-and-cookies data that track which pages users visit and how they interact with the site. *Id.* ¶ 29; Privacy Policy at 6–8.

Krueger created an account with Chess.com and watched videos on the site. Am. Compl. ¶¶ 35–36. He now alleges that Chess.com disclosed information identifying the videos that he viewed in violation of the VPPA. *Id.* ¶ 37.

## II. Legal Standard

Under Federal Rule of Civil Procedure 8(a)(2), a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up).[2] The Seventh Circuit has explained that this rule "reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)).

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Ord. of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678–79.

### III. Analysis

The VPPA prohibits a "video tape service provider" from knowingly disclosing "to any person, personally identifiable information concerning any consumer of such provider." 18 U.S.C. § 2710(b)(1). The statute defines "personally identifiable information" to "include[] information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider." *Id.*

---

[2]This Opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

§ 2710(a)(3). "Any person aggrieved by" a violation of the VPPA may sue for statutory damages (set at $2,500) and other relief. *Id.* § 2710(c)(1)–(2).

Chess.com argues that Krueger fails to plausibly allege three elements of a VPPA violation, in particular whether (1) Krueger is a "consumer" within the meaning of the statute; (2) Chess.com is a "video tape service provider"; and (3) Chess.com disclosed any "personally identifiable information." R. 21, Def.'s Br. at 1–2. As explained next, Krueger plausibly alleges each element of a VPPA violation, so the motion to dismiss is denied.

### A. Consumer

The Act defines "consumer" as "any renter, purchaser, or subscriber of goods or services from a video tape service provider." 18 U.S.C. § 2710(a)(1). Krueger agrees that he did not rent or purchase anything from Chess.com, so if anything, he would have to be a "subscriber" to bring a viable claim. R. 25, Pl.'s Resp. at 5. Chess.com appears to agree that Krueger subscribed to the website when he created an account. *See* Def.'s Br. at 6 (acknowledging that Krueger "subscribed" to Chess.com); *see also Gardner v. Me-TV Nat'l Ltd. P'ship*, 132 F.4th 1022, 1024 (7th Cir. 2025) (holding that "a 'subscriber' gives value in exchange for goods or services," including by providing personal information and data in exchange for an account on a website). But Chess.com contends that Krueger's "status as a subscriber must be linked to access *to videos*, and not to the … website or services more broadly." Def.'s Br. at 6 (emphasis in original). Because Krueger "does not allege that he subscribed to Chess.com in

5

order to gain access to prerecorded videos on the site," Chess.com argues that he is not a consumer under the VPPA. *Id.*

The Seventh Circuit recently rejected this exact argument. *See Gardner*, 132 F.4th at 1025. In *Gardner v. Me-TV National Ltd. Partnership*, users had to create an account with MeTV to receive its television schedules and newsletters, but anyone could watch its videos without an account. *Id.* at 1023–24. MeTV thus argued that the users were not consumers under the Act because they subscribed to *information* from MeTV, not *videos*. *Id.* at 1024–25. In response, the Seventh Circuit pointed out that the text refuted that argument: the Act "does not say 'subscriber of … *video services*'; it says 'subscriber of … services *from a video tape service provider*'." *Id.* at 1025 (emphases in original). In other words, "[n]othing in the Act says that the goods or services must be video tapes or streams." *Id.* So when users subscribe to *any* of the video tape service provider's services—not just its videos—they qualify as a consumer under the statute. *Id.* Because MeTV was a video tape service provider, and its users subscribed to its services, the users qualified as consumers. *Id.*

*Gardner* thus squarely forecloses Chess.com's argument. Because Krueger created an account with Chess.com, he subscribed to its services. Am. Compl. ¶¶ 35–36. And Krueger plausibly alleges that Chess.com is a video tape service provider (more on that next). That is all that is required to allege that he is a consumer under the VPPA. *See Gardner*, 132 F.4th at 1025 ("[W]hen a person … furnish[es] valuable data in exchange for benefits, that person becomes a 'consumer' as long as the entity on the other side of the transaction is a 'video tape service provider'.").

6

Even setting aside *Gardner*, Chess.com's argument misses the allegations in Krueger's complaint that also establish that he is a "consumer" even under a narrower interpretation of the term. Contrary to Chess.com's contention, Krueger does allege that he created an account on Chess.com and used it to watch videos. *See* Am. Compl. ¶ 36 (alleging that Krueger used his Chess.com account "to view video materials through his subscription including watching prerecorded video materials such as chess lesson videos"). So he is a consumer under the VPPA even under Chess.com's reading of the statute.

### B. Video Tape Service Provider

Chess.com next argues that it is not a "video tape service provider." Def.'s Br. at 7–8. The VPPA defines the term to "mean[] any person, engaged in the business … of rental, sale, or *delivery* of prerecorded video cassette tapes or similar audio visual materials." 18 U.S.C. § 2710(a)(4) (emphasis added). Chess.com argues that it is not "engaged in the business" of delivering audio visual materials because its videos are ancillary to its core business, which is operating a server on which users can play chess against each other online. Def.'s Br. at 8.

There is no sound reason to adopt the proposed distinction between providers who offer videos as a "core" part of their business versus an "ancillary" one. For one, the distinction finds little support in the statute. The statutory text is clear: "any person, engaged in the business" of "delivery" of videos is a video tape service provider. 18 U.S.C. § 2710(a)(4). The text does not say that video delivery must be the person's "core" or "main" business. *See Salazar v. Nat'l Basketball Ass'n*, 118 F.4th

7

533, 548 (2d Cir. 2024) (concluding that the definition of "video tape service provider" is "not limited to entities that deal *exclusively* in audiovisual content; rather, audiovisual content need only be *part* of the provider's book of business" (emphasis in original)); *Golden v. NBCUniversal Media, LLC*, 688 F. Supp. 3d 150, 156–57 (S.D.N.Y. 2023) (same). What's more, Chess.com offers no particular way to draw the line between a person who offers videos as a "core" versus "ancillary" part of the business. To be sure, it is possible to envision a scenario in which videos on a website are so disconnected from a company's business that the platform delivering the videos could not be fairly described as "engaged in the business" of delivering those videos. For example, a company that limited its delivery of videos to only those that show users how to navigate the company's own website, and for no other purpose, might not be "engaged in the *business*" of delivering videos.

But that is not close to the alleged factual setting presented here, so the Court need not say more about that possibility. Krueger alleges that part of Chess.com's business is to deliver videos of chess matches and lessons to its users. Am. Compl. ¶¶ 19–20. Indeed, Krueger alleges that Chess.com limits free account holders' access to certain videos in order to entice users to pay for a subscription.[3] *Id.* ¶ 21. Krueger

---

[3]Even the cases that Chess.com relies on are distinguishable from the facts that Krueger alleges here. *See Sellers v. Bleacher Rep., Inc.*, 2023 WL 4850180, at *6 (N.D. Cal. July 28, 2023) (citing *Carroll v. Gen. Mills, Inc.*, 2023 WL 4361093, at *1 (C.D. Cal. June 26, 2023)) ("[C]ourts have held that the VPPA does not apply to retail websites that provide audio visual media that is incidental to their primary business. … But these are primarily retail companies that use videos incidentally to sell their goods—not companies for whom the videos are the product.").

thus plausibly alleges that Chess.com is a video tape service provider because it "engages in the business" of delivering videos.

### C. Personally Identifiable Information

Finally, Chess.com argues that Krueger fails to plausibly allege that it knowingly disclosed his personally identifiable information. Def.'s Br. at 8–15. As a reminder, personally identifiable information "includes information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider." 18 U.S.C. § 2710(a)(3). Chess.com contends that Krueger makes only conclusory allegations without specific facts to substantiate that it disclosed (1) his identity, (2) the specific videos that he viewed, and (3) a connection between the two. Def.'s Br. at 8–10.

To defeat a motion to dismiss, Krueger's complaint need only "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (cleaned up). First, Krueger alleges that Chess.com collected and disclosed information about the specific videos he viewed using technologies that track how users interact with the website. Am. Compl. ¶¶ 25–28, 37–38. Second, he alleges that Chess.com collected and disclosed information about his identity—including his first and last name, email address, phone number, and location—all of which he provided when creating and using his account.[4] *Id.* ¶¶ 29–30, 37–38.

---

[4]A circuit split currently exists about the information that qualifies as personally identifiable information, specifically on how easy must it be to use the disclosed information to identify a specific person's video-watching behavior. *Compare Yershov v. Gannett Satellite Info. Network, Inc.*, 820 F.3d 482, 486 (1st Cir. 2016) (holding that the information must be

Finally, Krueger alleges that Chess.com disclosed these two types of information together, and thus identified him "as having requested or obtained specific video materials," 18 U.S.C. § 2710(a)(3). These factual allegations are specific, concrete, and plausible. Thus, accepting them as true and drawing all reasonable inferences in Krueger's favor, he provides adequate allegations that Chess.com disclosed his personally identifying information. *See Campos v. Tubi, Inc.*, 716 F. Supp. 3d 623, 637–40 (N.D. Ill. 2024) (denying a motion to dismiss when the plaintiff alleged similar facts about a VPPA violation).

In arguing otherwise, Chess.com "seeks to hold [Krueger] to an excessively high pleading standard and unduly ignores [his] factual allegations." *Campos*, 716 F. Supp. 3d at 637. For instance, Chess.com contends that Krueger does not adequately allege *how* the company collected and disclosed information about the specific videos he viewed. Def.'s Br. at 9–12. But Krueger "does not need to plead the circumstances of every alleged disclosure with particularity. This is especially so given the

---

"reasonably and foreseeably" likely to reveal which videos a specific individual watched), *with In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 290 (3d Cir. 2016) (holding that the information must "readily permit an ordinary person to identify a specific individual's video-watching behavior"); *see also* Def.'s Br. at 8 (asserting that the more stringent "ordinary person" standard applies). The Seventh Circuit has not weighed in on this issue. *Manza v. Pesi, Inc.*, 784 F. Supp. 3d 1110, 1117 (W.D. Wis. 2025).

But, for now, the Court need not decide this issue because Krueger alleges that Chess.com disclosed the videos he watched in connection with his first and last name, phone number, email address, and location, Am. Compl. ¶¶ 29–30, 37–38, which meets either standard. *See Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 986 (9th Cir. 2017) (describing how names, phone numbers, email addresses, and GPS coordinates of a particular device meet the "ordinary person" standard).

informational asymmetry at play; [Chess.com] would not, of course, have made [Krueger] privy to any potential disclosures." *Campos*, 716 F. Supp. 3d at 637. More importantly, based on an expert analysis, Krueger alleges that Chess.com used several methods to collect and disclose information about the videos he viewed, including pixels and third-party advertisement tracking. Am. Compl. ¶¶ 25–28, 37–38. And he points to language in Chess.com's privacy policy saying that third-party service providers track how users interact with the site and which pages they view. *Id.* ¶¶ 29–31. Although the privacy policy does not specifically mention video views, Def.'s Br. at 14–15, it still raises a reasonable inference that Chess.com tracks and discloses which videos Krueger viewed. At the pleading stage, that is sufficient to allege that Chess.com disclosed information about Krueger's video views.

Chess.com similarly argues that Krueger does not sufficiently allege which information it disclosed about his identity. Def.'s Br. at 9–12. Krueger alleges that Chess.com collects various types of identifying information when users create their account, Am. Compl. ¶¶ 29–30, 37–38, and Chess.com's own privacy policy says as much, Privacy Policy at 5. True, Krueger does not specifically allege which of these types of information Chess.com collected from him and disclosed. Def.'s Br. at 9; *see generally* Am. Compl. But taken together, his allegations that Chess.com collects these categories of information and that it disclosed his personal information are sufficient to state a plausible claim that Chess.com disclosed information that would reveal his identity. *See Campos*, 716 F. Supp. 3d at 637.
11

Chess.com also contends that Krueger fails to allege that it disclosed the two types of information in combination, such that a third-party could match Krueger's identity to the specific videos he watched. Def.'s Br. at 10–12. But Krueger's allegations that Chess.com collects and discloses both types of information are sufficient to raise a plausible inference that it discloses the information together in violation of the VPPA. *See Campos*, 716 F. Supp. 3d at 639.

Finally, Chess.com argues that the privacy policy does not support Krueger's allegations because it only says that Chess.com *may* collect and disclose personally identifying information, not that it does. Def.'s Br. at 12–13. This argument is unpersuasive. To be clear, all Krueger must do to defeat a motion to dismiss is make plausible factual allegations that Chess.com disclosed his personally identifiable information to third-parties. He need not identify foolproof documentary evidence that definitively establishes these facts. *Campos*, 716 F. Supp. 3d at 638. Here, Krueger actually has gone beyond what is required by presenting Chess.com's privacy policy. The policy says that Chess.com may collect and disclose information about users' identities and interactions with the site. *See* Privacy Policy at 5–8. Evidence that Chess.com reserves the right to collect and disclose this kind of information supports the plausible inference that it does so. *See Campos*, 716 F. Supp. 3d at 639. Maybe discovery will show otherwise. But at the pleading stage, that is more than enough to state a claim for relief.

What's more, Krueger also points to other parts of the privacy policy that expressly say that Chess.com *does* disclose this kind of information to third-parties. *See*

Privacy Policy at 5 ("[W]e and our third-party service providers collect information that Users provide when using the Services, including when Users create an Account."); *id.* at 6 ("We and our third-party service providers collect [personal information] directly from Users of the Services in the form of the actions they take and activities they complete when using the Services."); *id.* at 21 ("In the preceding 12 months, we have also disclosed the following categories of [personal information]."). Krueger has thus provided plausible allegations of a VPPA violation sufficient to defeat the motion to dismiss.

It almost goes without saying that discovery (which will be referred to the magistrate judge) might reveal the inaccuracy of some or all of Krueger's allegations. If it wishes, Chess.com may ask the magistrate judge to sequence discovery in a way that focuses on the question of whether Chess.com disclosed information to third-parties that reveals Krueger's identity and which videos he watched. But that is up to Chess.com to convince the magistrate judge. The Court does authorize discovery into the merits of the individual Plaintiff's claim and the propriety (or not) of class certification. Within those confines, the magistrate judge may sequence discovery however the judge sees fit.

## IV. Conclusion

Chess.com's motion to dismiss, R. 20, is denied. The answer to the complaint is due by October 15, 2025.

ENTERED:

      s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: September 28, 2025

14